IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 21-CR-160-6 (TJK) |
| v. | 18 U.S.C. § 1752(a)(1) |
| RYAN ASHLOCK, | |
| Defendant. | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Ryan Ashlock, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020

Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Ryan Ashlock's Participation in the January 6, 2021 Capitol Riot*

8. Defendant was a first-degree member of the Proud Boys who lived in Gardner, Kansas. Beginning in or around December 2020, defendant, other Proud Boys members, and others, including some of defendant's co-defendants, began discussing traveling to Washington, D.C., on January 6, 2021, to, among other things, show their support for former President Trump and protest Congress' certification of the Electoral College.

9. To coordinate their trip, individuals in the group sent electronic communications to each other which included discussions about engaging in violence with "Antifa" and Black Lives Matters supporters, obtaining/bringing two-way radios, medical supplies, weapons, and other equipment, and concealing their identities. During such communications, when another individual stated, "[w]e will be headed back on the 7th, either to prepare for war or celebrate a trump victory,"

defendant responded, "Yep. Best part is demorat [sic] cities and states will turn into 4th world shit holes."

10. On January 4, 2021, defendant and co-defendants Christopher Kuehne, Enrique Colon, and another individual drove from the Kansas City, Missouri/Kansas area to the Washington, D.C. metropolitan area. Defendant brought a handgun with him on the trip, but did not bring it into Washington, D.C. Co-defendant Kuehne brought two AR-15 or similar assault rifles on the trip, which he kept in his vehicle and did not bring into Washington, D.C.

11. In the early morning on January 6, 2021, defendant, co-defendants Kuehne, Colon, and William Chrestman, and others traveled from Arlington, Virginia, to Washington, D.C., where they met with a large group of Proud Boys at the Washington Monument. Along the way, co-defendants Felicia Konold and Cory Konold joined their group. Defendant and the group then marched in the streets near the U.S. Capitol while shouting, among other things, "Whose streets? Our streets." Defendant and the group ultimately made their way to the west side of the Capitol's grounds, outside of the restricted, fenced-off perimeter which had barricades staffed by USCP officers.

12. While outside of the Capitol's grounds, defendant observed others fighting with the police officers at the barricades and the gathering crowd push past the officers onto the Capitol's restricted grounds. Defendant, who was equipped with body armor, goggles, a filtered breathing mask, and a chemical irritant spray, proceeded over the toppled barricades and moved towards the Capitol's West Plaza where he attempted to prevent the police officers from using force against others in the crowd. Defendant also attempted to prevent officers from pushing a barricade forward and was sprayed in the face with a chemical irritant. Shortly thereafter, defendant left the Capitol's restricted grounds.

13. At some point after leaving the Capitol's grounds, on January 6, 2021, defendant engaged in communications with a close family member who warned defendant to get "away from the building." Defendant responded, among other things, "F[xxx] all these p[xxx]y liar politicians. Trump should have them all executed."

14. In the evening on January 6, 2021, defendant engaged in electronic messages with others regarding the day's events. When a participant in the messages said, "Gents this was needed […] A show of force to the dems," defendant responded, "[t]o the government." Several days later, on January 10, 2021, defendant messaged to others, "America needs a civil war. The government can't win one and the rest of the world goes into chaos with us."

15. The defendant knew at the time he entered the grounds of the U.S. Capitol on January 6, 2021, that the grounds were restricted. He further knew that he did not have permission or lawful authority to enter and remain in the Capitol's restricted grounds.

## *Elements of the Offense*

16. Defendant, Ryan Ashlock, knowingly and voluntarily admits to all the elements of 18 U.S.C. § 1752(a)(1). Specifically, defendant admits that he knowingly entered and remained in any restricted building or grounds, namely, the restricted grounds of the U.S. Capitol, without lawful authority to do so. Defendant further admits that 18 U.S.C. § 1752(c)(1)(B) defines "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Section 1752(c)(2) further defines "other person protected by the Secret Service" as "any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection."

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Christopher K. Veatch

Christopher K. Veatch
Assistant United States Attorney, Detailee
IL Bar No. 6276097
Patrick Henry Building
601 D Street, N.W.
Washington, D.C. 20530
christopher.veatch@usdoj.gov
(312) 886-3389

## DEFENDANT'S ACKNOWLEDGMENT

I, Ryan Ashlock, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 05/08/22

Ryan Ashlock
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5/13/22

Michael E. Lawlor
Attorney for Defendant