<u>**FILED UNDER SEAL**</u>
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. 21-cr-00160-TJK** |
| | **:** | |
| **RYAN ASHLOCK** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

<u>**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**</u>

On November 10, 2022, 23-year-old Ryan Ashlock of Gardner, Kansas will come before this Court for sentencing after having accepted responsibility for his role in the events of January 6, 2021. Mr. Ashlock has accepted responsibility in three crucial steps: (1) upon his arrest in February 2021, he confessed his conduct and provided a statement to agents of the Federal Bureau of Investigation; (2) after having secured counsel, he proffered with the United States Attorney's Office; and (3) on June 14, 2022, Mr. Ashlock admitted his guilt under oath before this Court. Mr. Ashlock, by and through his attorneys, Michael E. Lawlor, Nicholas G. Madiou, and Brennan, McKenna & Lawlor, Chtd., submits this memorandum in support of the arguments to be presented at the time of sentencing.

This memorandum focuses on Mr. Ashlock's personal history and characteristics, including his age, employment history, lack of criminal record, acceptance of responsibility, efforts at cooperation with the United States Government, and the tremendous support he enjoys from his family and community.

1

Mr. Ashlock respectfully asks that this Court consider this information in fashioning a sentence of probation with conditions of community service.

## I.   **Introduction**

On February 26, 2021, Mr. Ashlock was charged in a six-count criminal Indictment for alleged offenses related to the storming of the U.S. Capitol on January 6, 2021. Specifically, on February 26, 2021, Mr. Ashlock was charged with Conspiracy, in violation of 18 USC § 371 ("Count One"); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 USC §§ 1512(c)(2) and 2 ("Count Two"); Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting, in violation of 18 USC §§ 231(a)(3) and 2 ("Count Three"); Entering and Remaining in a Restricted Building or Grounds and Carrying a Deadly or Dangerous Weapon, in violation of 18 USC § 1752(a)(1) and (b)(1)(A) ("Count Five"); and Entering and Remaining in a Restricted Building or Grounds and Carrying a Deadly or Dangerous Weapon, in violation of 18 USC § 1752(a)(2) and (b)(1)(A) ("Count Six"). (Indictment, ECF No. 29.)

Upon Mr. Ashlock's arrest on February 22, 2021, he voluntarily spoke with FBI agents and admitted to his conduct. Later, Mr. Ashlock again met with law enforcement and participated in a proffer in which he admitted to his conduct and provided information about the conduct of others involved in this case. On June 14, 2022, Mr. Ashlock appeared before this Honorable Court, and pleaded guilty to the

lesser included offense in Count Five of the First Superseding Indictment, pursuant to a written plea agreement and Rule 11(c)(1)(B). (First Superseding Indictment, ECF No. 132; Plea Agreement, ECF No. 147; Statement of Offense, ECF No. 148.)

Sentencing in this matter is currently scheduled for November 10, 2022. Mr. Ashlock submits this memorandum in support of his request for a sentence of probation with conditions of community service.

## II.   Sentencing Guideline Calculation

### A. Criminal History

The parties agree that Mr. Ashlock comes before the Court with no prior juvenile or adult criminal history – arrests or convictions. He is therefore assessed a criminal history score of zero, and designated in Criminal History Category I.

### B. Calculation of the Advisory Sentencing Guideline Range

The calculation of the advisory sentencing guidelines in the presentence investigation report ("PSR") differs from that presented in the parties' written plea agreement.

In the PSR, the U.S. Probation Office has set forth the advisory guidelines range applicable to this case as follows:

Base Offense Level (U.S.S.G. §2A2.4):               10

Acceptance of Responsibility (USSG §3E1.1(a)):      -2

Total Adjusted Offense Level:                        8

3

Like the United States, Mr. Ashlock respectfully disagrees with the PSR's calculations. The parties agree that the PSR's application of USSG § 2A2.4 for the base offense level in this case is incorrect. Instead, the parties submit that the offense in this case calls for the application of Guidelines §2B2.3, as stipulated in the plea agreement. In support of this position, Mr. Ashlock adopts the arguments and rationale submitted in the United States' sentencing memorandum, at ECF Dkt. No. 169, 12-14.

The parties respectfully submit that the advisory guideline calculations should be as follows:

Base Offense Level (U.S.S.G. §2B2.3(a)):                                       4

Trespass on restricted grounds (U.S.S.G. §2B2.3(b)(1)(A)(vii):  +2

Acceptance of Responsibility (USSG §3E1.1(a)):                        -2

Total Adjusted Offense Level:                                                       4

With a total adjusted offense level of 4, and an agreed Criminal History Category of I, Mr. Ashlock's advisory sentencing guidelines range for this offense is 0 to 6 months of imprisonment. Mr. Ashlock's sentencing guideline range falls into Zone A. For the reasons set forth throughout this memorandum, Mr. Ashlock respectfully asks this Court to impose a guidelines sentence of probation.

### III.   A Reasonable Sentence in this Case

The Supreme Court has said that the cornerstone of federal sentencing is that the sentencing judge "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (*quoting Koon v. United States*, 518 U.S. 81, 113 (1996)). After properly calculating the appropriate Advisory Guidelines range, this Court must consider all of the factors set forth at 18 U.S.C. § 3553(a) and undertake "an individualized assessment" of the case based on the facts presented.  *United States v. Akhigbe*, 642 F.3d 1078, 1084 (D.C. Cir. 2011) (citing *Gall v. United States,* 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). In the sentencing context, the United States Court of Appeals for the District of Columbia Circuit gives "due deference" to a district court's fact-specific determinations and application of the Advisory Guidelines to the facts of each case, "a standard which reflects the recognition that the district courts should be afforded some flexibility in applying the guidelines to the facts before them." *United States v. Olejiya*, 754 F.3d 986, 990 (D.C. Cir. 2014) (citations omitted).

Here, when considering all relevant factors, a sentence of probation with conditions of community service is sufficient punishment for Mr. Ashlock's criminal

conduct, without being greater than necessary to achieve the Congressionally-recognized purposes of sentencing.

## A. Mr. Ashlock's Personal History & Characteristics

In 18 U.S.C. § 3553(a)(1), Congress has directed that district courts consider a criminal defendant's "history and characteristics" to determine whether a sentence is sufficient, but not greater than necessary to promote the purposes of sentencing. *United States v. Holmes*, No. CR 02-24, 2021 WL 1518336, at *9 (D.D.C. Apr. 16, 2021). The United States Court of Appeals for the District of Columbia Circuit has held that a "district court *must* take into account all relevant facts related to a defendant's 'history and characteristics.'" *United States v. Delaney*, 651 F.3d 15, 16 (D.C. Cir. 2011) (emphasis added) (citing 18 U.S.C. § 3553(a)(1)). When considered in the context of his young life, Mr. Ashlock's history and characteristics weigh heavily in favor of a non-custodial sentence.

Mr. Ashlock comes before the Court at 23 years of age. PSR at 2. He has no prior criminal record.  PSR ¶¶ 58-64..

On April 16, 1999, Mr. Ashlock was born in Overland Park, Kansas to Ron and Terri Ashlock. PSR ¶ 66. Mr. Ashlock's parents have submitted a letter to the Court in advance of sentencing. *See* Exhibit A. In addition, they will be present at the sentencing hearing to show their support for Mr. Ashlock. In their letter, Ron and Terri Ashlock have highlighted for the Court Mr. Ashlock's dedication to service as

reflected in his Eagle Scout project, which he completed at an animal shelter. They have also provided for the Court a list of Mr. Ashlock's hobbies, interests, and personal characteristics. Of note, Mr. Ashlock donates his time working with cats and dogs at a local shelter. He regularly helps his elderly neighbors by shoveling snow and clearing ice from their driveways. Mr. Ashlock is a family-oriented young man who enjoys spending time with his nine nieces and nephews. Over the past few months, he has become active in his brother's church.  Ron and Terri Ashlock also describe their son's love of Halloween; his enjoyment of cooking, painting, and playing board games; and his penchant for gardening.







Mr. Ashlock's brother Michael has also written to the Court. Exhibit A. Michael Ashlock has described for the Court his shock and surprise at Mr. Ashlock's involvement in the offense conduct for which he stands before the Court. Michael Ashlock describes his brother as a "shy and timid" young man who is nonetheless an "awesome uncle to [his] five kids." Michael Ashlock also notes that Mr. Ashlock has been attending church with him.



The undeniable impression left from these letters is that Mr. Ashlock comes before this Court as a sensitive and immature young man who is unlikely to engage in criminal conduct in the future.

Mr. Ashlock grew up in a stable home, with good values. He achieved all normal milestones, and spent his time engaged in healthy relationships with family and friends. As a child, Ryan enjoyed playing video games, playing with LEGOS, collecting coins and frequenting Renaissance fairs. He has been described as impressionable, and someone with a soft heart. Mr. Ashlock is a 2017 graduate of Gardner Edgerton High School in Gardner, Kansas. PSR ¶ 90. He has maintained employment since his high school days. As of March 2022, Mr. Ashlock has been employed at a Sauers Brand, factory in New Century, Kansas that produces condiments and spices. PSR ¶ 96. From September 2021 through March 2022, Mr. Ashlock worked as an electrician in Gardner, Kansas. Previously, Mr. Ashlock has worked for a labor union and for a Walmart store as a cart pusher. PSR ¶¶ 98-99.

Mr. Ashlock has remained on conditions of pretrial release since February 2021. PSR ¶¶ 14-15. He has remained compliant with all conditions. PSR ¶ 16. As a sign of the trust he has earned, on February 9, 2022, this Court granted Mr. Ashlock's motion to modify his conditions of release to suspend the home detention and electronic home monitoring provisions. PSR ¶ 18. This Court can be sure, based

on his long history of compliance in this case, that Mr. Ashlock will abide by all Court orders as they relate to the sentence to be imposed.

While the Court may wonder how a young man with such positive attributes could have found himself in a position to commit the offense conduct at issue in this case, it is important to point out that Mr. Ashlock came to the Nation's Capital on January 6, 2021 with genuinely held political beliefs. Those beliefs were impressed on him by many different sources, including members of his community, the national media, and numerous elected officials of his political party. While certainly not an excuse for his conduct, it is clear that Mr. Ashlock's immaturity and impressionability led him to Washington D.C. on January 6, 2021.

Mr. Ashlock will address this Court at sentencing to show the Court that he has accepted responsibility for his role in the events of January 6 and to express his promise to live a law-abiding life in the future. A prison sentence is not necessary to achieve deterrence in this case. Mr. Ashlock has been deeply affected by being charged and convicted of a federal criminal offense. As someone who has never been in trouble with the law at any point in his life, this has truly been an eye-opening experience for Mr. Ashlock. As demonstrated by his efforts to cooperate with law enforcement and his decision to plead guilty, Mr. Ashlock has done everything in his ability to atone for his conduct, and to respond to these charges in the most positive way possible. He will never engage in similar conduct again, and this Court

should feel comfortable imposing a guideline sentence that does not require incarceration.

### B.   Efforts at Cooperation

Although Mr. Ashlock will not receive a downward departure under USSG § 5K1.1, his prompt and willing assistance to the Government in the investigation and prosecution of this matter is a noteworthy consideration for this Court at the time of sentencing. Upon Mr. Ashlock's arrest, he voluntarily spoke to federal law enforcement agents, and admitted to his conduct in this case. Later, with the benefit of counsel, Mr. Ashlock proffered with the government, truthfully admitted his involvement in the offense and told the government and its investigators everything he knew about the offense conduct, the alleged conspiracy, and its participants. He answered questions posed by the Government without hesitation. For fear of reprisal from others, Mr. Ashlock did not take the further step of agreeing to testify for the Government, should he be called upon to do so.  Accordingly, Mr. Ashlock and the Government never entered into a formal cooperation plea agreement, and the Government will not be making a motion for a downward departure under USSG § 5K1.1

Nevertheless, Mr. Ashlock's assistance to the Government in this case is still relevant at sentencing. Pursuant to 18 U.S.C. §3553(a)(1) the Court must consider "the nature and circumstances of the offense and the history and characteristics of

the defendant." This is the factor under which Mr. Ashlock's efforts at cooperation would be considered. Mr. Ashlock told the truth when he met with the Government. The completeness of his narrative was only limited by what he personally knew. Mr. Ashlock's assistance was comprehensive as to his knowledge of the conspiracy. He answered questions without hesitation, providing as much detail about co-conspirators as he had. Finally, as soon as Mr. Ashlock consulted with counsel, he agreed to provide information to the Government and attended a proffer after his arrest. His prompt decision to explain his involvement and offer his help shows that he is not a career criminal, but a young man who desperately wants to make amends for making a foolish choice.

## C.  Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *United States v. Williams*, 773 F.3d 98, 108 (D.C. Cir. 2014) (citing 18 U.S.C. § 3553(a)(6)). In this case, a sentence of probation with conditions of community service addresses that consideration.

Judges of this Court have imposed similar sentences for January 6 defendants who, like Mr. Ashlock, accepted responsibility and pled guilty to violations of 18 U.S.C. § 1752(a)(1). While each case has its own unique circumstances, Mr. Ashlock respectfully submits the following cases for the Court's consideration.

- *United States v. Rachael Pert*, No. 21-CR-139-TNM. Sentence imposed: 24 months' probation, 100 hours of community service, $500 in restitution. At sentencing, Judge McFadden credited Ms. Pert's "early acceptance of responsibility" and positive "history on pretrial supervision." *Id.*, Sent. Tr. at 44, ECF No. 64. Those same factors apply to Mr. Ashlock's case.

- *United States v. Jeffrey Witcher*, No. 21-CR-235-RC. Sentence imposed: 12 months' probation, 60 hours of community service, $500 in restitution.

- *United States v. Nicholes Lentz*, No. 22-CR-53-RDM. Sentence imposed: 1 month home detention, 36 months' probation, 100 hours of community service, $500 in restitution. Like Mr. Lentz, Mr. Ashlock too voluntarily met with law enforcement to discuss the events of January 6. *Id.*, Def.'s Sent. Memo at 2-3, ECF No. 31.

- *United States v. Verden Nalley*, No. 21-CR-116-DLF. Sentence imposed: 24 months' probation, 60 hours of community service, $500 in restitution. Having considered the sentences imposed in similar cases, Judge Friedrich concluded that a probationary sentence was warranted even where Mr. Nalley "was a bit slower to express his remorse than he should have been." *Id.* Sent. Tr. at 32, ECF No. 107.

In its sentencing memorandum, the Government cites to the cases of *United States v. Tyron*, no. 21-cr-420 (RBW) and *United States v. Fisher*, no. 21-cr-142(CJN) to support a sentence that includes incarceration. The Government's reliance on these cases is misplaced. As glossed over by the Government, both Defendants Tyron and Fisher *entered* the United States Capitol as part of the offense conduct in their respective cases. While Mr. Ashlock did cross over barriers on the Capitol grounds, he *never entered* the Capitol building. Indeed, Mr. Ashlock never even attempted to enter the Capitol. Moreover, the Government's attempt to make an example of Mr. Ashlock as a "Proud Boy" is equally inappropriate. While the Government spends much time discussing the "Proud Boys" as an organization, it

14

ignores that Mr. Ashlock's association with that group is extremely loose, including little more than attending group meetings at bars and ultimately coming to Washington D.C. together on January 6, 2021.

For Mr. Ashlock, a young man with no criminal history who has timely and completely accepted responsibility for his conduct, a sentence of a period of probation with conditions of community service is appropriate.

### D. Acceptance of Responsibility and Remorse

At his guilty plea proceeding, Mr. Ashlock accepted responsibility before this Court with a genuine desire to atone for his conduct of January 6, 2021 and to move past this shameful period of his life. Prior to entering his formal plea of guilty, however, Mr. Ashlock began the process of atonement in the most sincere way possible: he spoke with law enforcement upon his arrest, truthfully admitted to his conduct, and later provided information to the United States in attempt to provide substantial assistance to the Government in the prosecution of others.

Although, Mr. Ashlock will not receive a departure for his proffer with the Government, under the pre-*Booker* Guidelines regime there is a basis for a departure or variance for "extraordinary acceptance of responsibility." *See United States v. Rogers,* 972 F.2d 489, 492 (2d Cir. 1992) (noting that "extraordinary acceptance of responsibility" may, in appropriate cases, provide

basis of departure). Mr. Ashlock respectfully requests that this Court consider his fulsome and timely acceptance of responsibility in imposing sentence.

### E. Support of Family & Community

Mr. Ashlock stands before the Court with a large network of family and friends, who all support and love him dearly. Those closest to Mr. Ashlock have written letters to the Court expressing their love and admiration for the young man who stands before the Court. *See* Exhibit A. It is clear from the attached letters that, Mr. Ashlock is a loving family member and friend, and good natured and kind person. Those closest to Mr. Ashlock know that he is genuinely remorseful, and that the offense conduct in this case is not a true reflection of who he is as a person. Mr. Ashlock asks this Court to consider this support when imposing its sentence in this case.

### IV.   <u>Conclusion</u>

In light of the above, Mr. Ashlock respectfully requests that this Court exercise leniency in its ultimate resolution of this matter and consider Mr. Ashlock's personal history and characteristics, his acceptance of responsibility and remorse, and the tremendous support he enjoys from his family.

A guideline sentence of probation with conditions of community service for Mr. Ashlock's involvement in the activities surrounding the attack on the United

States Capitol on January 6, 2021 would be sufficient, but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/
_____
Michael E. Lawlor
Nicholas G. Madiou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301.474.0044
mlawlor@verizon.net
nmadiou@brennanmckenna.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 7, 2022, a copy of the foregoing was electronically filed, with a copy sent to counsel for the United States Attorney's Office for the District of Columbia.

/s/
_____
Michael E. Lawlor